NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ELECTRO PLASTIC FABRICS, INC., Respondent.

No. 11145.

United States Court of Appeals Fourth Circuit.

Argued June 1, 1967.

Decided July 11, 1967.

* Of the Fifth Circuit, sitting by designation.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

The National Labor Relations Board found that Electro Plastic Fabrics violated Section 8(a) (1) and (3) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), (3). The Board petitions for enforcement of its order [1] requiring the Company to cease and desist from its unfair labor practices; offer James Brinkley his former job or a substantially equivalent position, and make him whole for any loss of earnings suffered by reason of the discrimination against him; and post appropriate notices.

## DISCRIMINATORY DISCHARGE

James Brinkley was employed in the Company's maintenance department. Although Brinkley's station was at the maintenance work bench, his duties required that he move from department to department to do general repair and maintenance work.

Upon learning of Union [2] activity in mid-January 1965, Brinkley became an active union organizer and personally obtained union authorization cards from some twenty or twenty-five of the approximately 225 employees. He was discharged on January 29, a week before the Union requested recognition.

The reason noted on Brinkley's termination slip was "Work unsatisfactory —not staying on the job." The Company urges that the immediate cause for discharge January 29 was Brinkley's failure to heed earlier warnings to remain within his work area unless authorized to go elsewhere. The Trial Examiner found, however, that the cause for the discharge was Brinkley's union activities.

The Trial Examiner credited Brinkley's testimony that Company supervisor Owen "said he knew Brinkley was going to be discharged, that he hadn't been able to tell him, but, that the Company was

Abigail Cooley Baskir, Atty., National Labor Relations Board (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and George B. Driesen, Atty., National Labor Relations Board, on brief), for petitioner.

Richard A. Bigger, Jr., and William Sturges, Charlotte, N. C., (Weinstein, Waggoner, Sturges & Odom, Charlotte, N. C., on brief), for respondent.

1. The decision and order of the Board are reported at Electro Plastic Fabrics, Inc., 61 L.R.R.M. 1481 (March 24, 1966).

2. Chemical and Atomic Workers International Union, AFL–CIO.

watching him," and that "[o]n the night before the discharge \* \* \* Owen told him that Superintendent Dalton said he had ascertained that it was Brinkley who had been handing out Union cards." Brinkley also said that his supervisor Kanode told him that the reason for his having been discharged was, "Jim, it's over the Union."

■■ Credibility resolutions are for the Trial Examiner and the Board, and when reasonable, are entitled to stand on review. E. g., NLRB v. Lexington Chair Co., 361 F.2d 283, 288 n. 4 (4th Cir. 1966). The question is not whether we agree with the Board's findings but whether they are reasonable and supported by substantial evidence viewing the record as a whole. Clearly, the conclusion that Brinkley was discriminatorily discharged in violation of Sections 8(a) (1) and (5) is supported by substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

### NO-SOLICITATION RULE

The Union formally requested recognition on February 5, 1965. After receiving a negative response from the Company, the Union filed a petition for an election on February 8. Sometime tween February 8 and 11, a rule was posted by the Company which prohibited

"\* \* \* UNION ORGANIZATION ACTIVITIES DURING WORKING TIME. ANY ONE WHO DOES SO, AND THEREBY, NEGLECTS HIS OWN WORK, AND INTERFERES WITH THE WORK OF OTHERS, WILL BE SUBJECT TO DISCIPLINARY ACTION."

It is undisputed that *other* kinds of solicitation continued after posting of this notice, in some cases taking employees away from their jobs. The Board found, in the words of the Trial Examiner, "widespread and variegated" solicitations including collections for gifts for employees and sales of cosmetics and other merchandise. At the same time, *anti*-union solicitation was actively carried on in the plant.

■ We believe, after examination of the record, that substantial evidence supports the Board's finding that the Company no-solicitation rule was posted and enforced, not to promote legitimate interests of production and order, but to impede the Union's organization of employees, and thus violated Section 8(a) (1) of the Labor Act.

■ The Company does not discuss in its brief the finding of an 8(a) (1) unfair labor practice by "threatening its employees" with reprisals for unwillingness to participate in antiunion activity. The finding is supported by substantial evidence.

■ The Company may not properly challenge before this court the Board's order as going beyond the scope of viclations found, since the part of the order questioned [3] was not specifically objected to before the Board on the grounds here advanced. See Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e); NLRB Rules & Regs. § 102.46 (b) (1), (4), 29 C.F.R. § 102.46(b) (1), (4). But we think the scope of the order is not excessive in this case. See NLRB v. Entwistle Mfg. Co., 120 F.2d 532, 537 (4th Cir. 1941).

Enforced.

---

**3.** "A. Cease and desist from:

\*     \*     \*     \*     . \*

"(6) In any other manner interfering with or restraining employees in the exercise of their right to self-organization, to form labor organizations, to join or assist the above-named or any other labor organization, to bargain collectively or other mutual aid or protection or to refrain from any or all such activities \* \* \*."